UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 15-21966-cv-O'SULLIVAN

JORGE ANDRES REYES MONTES, a/k/a
JORGE ANDRES MENDOZA REYES,

      Plaintiff,

v.

COLLINS & 74TH STREET, INC. d/b/a
M & L MARKET,
MOHAMMED S. HUSSAIN,

      Defendants.
_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, COLLINS & 74th STREET, INC. ("COLLINS")  and MOHAMMED S. HOSSAIN ("HOSSAIN"), [together referred to in this motion as "MARKET"] through undersigned counsel, and pursuant to Rule 56 and Local Rules 7.1(a) and 56.1, move for entry of a summary judgment against JORGE ANDRES REYES MONTES ("MONTES") on the issues of liability and good faith.  A concise statement of undisputed material facts is filed simultaneously in compliance with L.R.56.1. Exhibits referred to herein are found under the tab noted in the Appendix which accompanies this motion.

**I.  Overview of Claims and Defenses**

MONTES' initial complaint pled a single count for overtime pay under the Fair Labor Standards Act ("FLSA").  In it, he alleged that he worked an average of 55 hours a week during his first period of employment ("First Period of Employment"), 90 hours per week through a second period of employment ("Second Period of Employment")

and 55 hours a week during his final period of employment ("Third Period of Employment").  See ¶¶ 14-16.

A week later MONTES amended his complaint to add a count for Retaliation claiming he was terminated immediately following service of this lawsuit on MARKET. [DE 13].   MARKET denied all allegations and in particular that MONTES was terminated.  It raised several defenses, including its good faith compliance with the FLSA.  It pled that, in the event a jury found that MONTES had been terminated (whether constructively or otherwise), there were legitimate reasons for his separation.

MONTES filed his Statement of Claim on 6/9/15 which tracked the three different periods of employment stated in the Amended Complaint.  [DE 14].   He claimed he was paid straight time for all overtime hours during 32 weeks of employment.    On 7/17/15, MARKET served its Initial Disclosures which included copies of MONTES' time cards and paychecks.    Numerous paychecks reflected MONTES _had been paid overtime at time and a half_ when he worked over 40 hours a week.   The paychecks and time cards also showed significant gaps in MONTES's employment;  in total he had  only worked for MARKET 18 full weeks and two partial weeks.

## II.  Legal Standards

The purpose of a summary judgment motion is "...to see whether there is a genuine need for trial." Matsushita Elec. Induc. Co. v. zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106, S. Ct. 1348 (1986).   MARKET must either show that MONTES has no evidence to support his case or present "affirmative evidence demonstrating that [he] will be unable to prove his case at trial." United States v. Four

Parcels of Real Property, 941 F. 2d 1428, 1437-38 (11th Cir. 1991) (en banc).

While inferences from the evidence must be drawn in favor of MONTES, he "may not rest upon mere allegations or denials", but "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L.Ed 202 (1986); Thompson v. Miami-Dade County, 2009 U.S. Dist. LEXIS 33486 (S.D. Fla 2009). The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. Chapman v. Al Transport, 229 F. 3d 1012, 1023 (11th Cir. 2000)

## III.  Summary of Undisputed Facts

The following summary is drawn from MARKET's Concise Statement of Undisputed Material Facts.[1]   MARKET operates a small grocery store on Collins Avenue in Miami Beach, FL.  HOSSAIN is the president of COLLINS and was at all times responsible for its daily operations.  MONTES was employed by MARKET to stock shelves, assist in the deli department, and perform general cleaning duties. He was supervised by the store's general manager Mr. Kashem and two assistant managers, Ms. Khan and Mr. Karim.  The managers reported directly to HOSSAIN who was the only person in MARKET's hierarchy with authority to fire employees.

MONTES began working for MARKET on 8/12/14.  His last shift was worked on the morning of 5/25/15.[2]    MONTES had three breaks in employment during the

---

[1] While MARKET actually disputes numerous allegations made by MONTES, it accepts his version of facts for purposes of this motion

[2] The period from 8/12/14 through 5/25/15 is referred to in this motion and its

Relevant Time Period. [3]   MONTES has no independent recollection of the hours he worked in any given week or even the days of the week he worked;  his hours changed from day to day.   He also has no recollection of the dates he took leaves of absence.

MONTES acknowledged that his work schedule changed frequently.  His hours varied from day to day.  Even when he was assigned to work a particular schedule, he sometimes came in hours late.  He does not contest that he ***punched a time card.*** Because his hours varied so widely, MONTES kept track of his weekly hours ***by taking photos of his time cards with his cell phone***. [4]   However, MONTES' cell phone fell into a pool and the photos cannot be recovered.

At deposition, MONTES testified that he worked about 48-50 hours a week during his First Period of Employment which contradicted the 55 hours per week he claimed in his Amended Complaint and Statement of Claim.   The same is true for the hours he claimed to have worked during the Second Period of Employment.  Whereas MONTES' Amended Complaint alleged that he worked an average of 90 hours ***each week*** during his Second Period of Employment, at deposition MONTES admitted that there were some weeks in which he might have worked about 80 hours and others in which he

---

accompanying Statement of Undisputed Material Facts as the  "Relevant Time Period.."

3      The dates are evident from MONTES' time cards.  The first break took place between 9/17/14 and 12/23/14.   The second occurred from 3/27/15 through 4/10/15. The third occurred from 4/16/15 through 5/1/15.  Additionally MONTES was absent on 5/1715 and 5/29/15.

4      MONTES claimed he also lost the photos he took of a second set of time cards which he claimed were used to record his evening shift hours during the unidentified weeks in which he worked double shifts. MARKET denies there ever was a second set of time cards.

might have worked as much as 118-120 hours.    MONTES also claimed that there were work weeks within the Second Period of Employment in which he only worked 55-60 hours.    However, MONTES **_had no recollection at all_** of which weeks--or even how many weeks--he worked either 55-60, 80, 90, 118 or 120 hours.    MONTES did not even know what day of the week on which the work week began!    He testified that nothing could refresh his recollection.

MONTES was shown time cards and their corresponding paychecks at his deposition.  The pay checks indicated he had been paid for all hours over 40 in a work week **_at a time and a half rate_**. [5]   MONTES did not contest the accuracy of the number of work hours reflected on his time cards and paycheck  – only that his hourly pay rate was wrong and should have been $9.00/hour. [6]   He claimed that MARKET had figured a way to cheat him out of overtime.

MONTES acknowledges that during his first leave of absence he was replaced by another employee.   After he returned to Miami, he re-applied for employment but there was no available position.    Finally, MARKET called him with an opportunity to return to work.

However in March, 2015, MONTES was involved in a car accident.   A month later,

---

5   During this case, MARKET determined that its accountant had not properly calculated overtime on several pay checks.  MARKET tendered the amount owed and allowed MONTES to reserve his right to seek liquidated damages and attorneys fees as to those weeks.

6     MONTES testified he was told by the Meat Market manager (who has no hiring authority) [ TAB D] that he would receive $9.00/hr but he initially was paid at $8.00/hr MONTES pay was increased to $8.05 in January, 2015.  He received a raise to $9.00/hr on 3/5/15 and to $9.50 on 5/14/15.

on 4/17/15, he visited Baptist Hospital and sought emergency treatment of pain. MONTES was given a note by a treating physician which told him not to engaged in any activities for 5 days.    On 4/23/15, MONTES returned to Baptist's Emergency Room and was advised to continue on rest for another week.

While MONTES was out for this period, MARKET hired and trained another employee to perform his duties.  When MONTES returned to work on 4/30/15, he was placed on the schedule for 3 days a week and a shorter shift.   He asked to be assigned more hours but was told "no."

MONTES thought he was not on the schedule for either 5/17/15 or 5/29/15 but in fact he had been placed on the schedule both days.    When he did not show up on each occasion, Mr. Kashem had to find an emergency replacement.  MONTES also had not performed all his cleaning duties on 5/25/15 which forced a co-worker on the next shift and Mr. Kashem to have to complete them.

MONTES often borrowed money from others, including from MARKET, his girlfriend and co-workers.    One month prior to his separation, MONTES was loaned $80 by Mr. Karim on the condition that he repay it out of his next paycheck.  He also owed money to a co-worker which he had promised to repay from his next pay check. On the last day of MONTES' employment, Mr. Karim confronted MONTES about repayment of the loan and MONTES got into an argument with him in front of customers and co-workers.    MONTES left the store and as he walked out, the co-worker also confronted him about repayment of money that was owed.   MONTES never paid back either MARKET or the co-worker.

## IV.   ARGUMENT

Count I – Overtime pay

An employer's time records are the best evidence of an employee's work hours unless the employee puts forth plausible evidence to establish that the records are inaccurate and ***ought not to be relied upon***.  Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1316 (11th Cir. 2007).  See also Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1315 (11th Cir. 2013).   Here, MONTES clearly *did* rely on MARKET's time cards to memorialize his work hours:  ***he took photos*** of the time cards each week to cross check his punched hours against those reflected on his paycheck.   MONTES took the photos instead of keeping track of his hours by any other means.

While MONTES alleges that at some period of time there was a second set of time cards, even if there were (which MARKET denies) this fact does not invalidate the accuracy of those only time cards MARKET produced in discovery.   Indeed, MARKET's time records are the best evidence of the days of the week on which MONTES worked, the days he did not work; and the beginning and end dates of each period of his employment.   Therefore, MONTES' overtime claims must be analyzed in the context of these time records ***and his sworn response to Interrogatory 2(d) and deposition testimony.***

A.   The First Period of Employment.

Regardless of the date on which MONTES' employment actually began,  his Amended Complaint [DE 13] and Statement of Claim [DE 14] [7] both plead entitlement to

---

[7]      MONTES reviewed his Statement of Claim before it was filed for correctness.

overtime beginning on **_9/1/14._**. See ¶ 14.  In response to Interrogatory # 2(d), MONTES

claimed that up until 9/25/15,  he worked from 7:00 a.m. to 4:30 p.m. 5 days a week.

This  _47.5 hours_ [8]    On the other hand, MARKET's time records for the same period

show MONTES' total work hours for each week as:

> Pay Period ending 9/3/14        52.5 hrs.
>
> Pay period ending  9/10/14        53.50
>
> Pay Period ending 9/17/14        51.25

Therefore, to the extent that MARKET's time records show MONTES worked **_more_**

**_hours than he even claims_**, MARKET is entitled to summary judgment establishing

that the hours recorded on MONTES' time cards are the true hours that MONTES

worked for these weeks.   By the same token, to the extent that  MARKET's pay records

for these same time periods show that MONTES was paid for his overtime hours at the

rate of time and a half, MARKET is entitled to summary judgment as to liability for the

period 9/1/14 through 9/25/15. [9]   And since MONTES admits that he did not work for

MARKET from 9/26/15 through about 11/30/15, MARKET also is entitled to summary

judgment on liability as to this period.

    B.   Second Period of Employment.

    MONTES' response to Interrogatory # 2(d) admits that during the period 12/11/14

---

[Id., p. 83:5-8]

[8]     MARKET did not require employees to clock out for breaks.  For purposes of this motion, MARKET accepts MONTES' representation that he worked through his breaks.

[9]      While reviewing MONTES' time and pay records,  MARKET found  four instances in which MONTES' pay was incorrectly calculated by its bookkeeper. MARKET tendered the difference in pay to MONTES.

through 12/27/14, he worked 7 hours a day 5 days a week. [10]   Since MONTES never worked more than forty hours during this period and is owed no overtime, MARKET is entitled to summary judgment in its favor and against MONTES on liability.

    C.    <u>Third Period of Employment</u>

MONTES admits that by the beginning of April, 2015, he worked only about 55 hours each week.  He also admits that he did not work for MARKET  during a period of about 20 days in April.   MONTES' time records show that he last worked a shift on 4/16/15.  There are no other punches through April 30, 2015.   [TAB B].   Given that MARKET's time records coincide with MONTES' testimony, MARKET is entitled to summary judgment in its favor on liability for the period 4/16/15 through 4/30/15.

Furthermore, MONTES claims that he worked only 3 days a week or about 21 hours a week during the period of 5/1/15 through 5/30/15 .   [Id, p. 46:18-20].   He, therefore, did not accrue overtime  and MARKET is entitled to summary judgment on liability in its favor and against MONTES for this period, too.

    D.    <u>The Period from 12/29/14 through 1/31/15 and 2/1/15 through 4/28/15.</u>

MONTES' sworn response to Interrogatory 2(d) claims that he worked 112 hours a week from 12/29/14 through 1/31/15 and about 55 hours a week from 2/1/15 through 4/28/15. [11]   On the other hand, MARKET's time records show no clock-in's at all

---

10    MARKET denies that MONTES worked during this period but accepts MONTES' testimony as true for the purposes of this motion.

11    As noted above  MONTES could not have worked 55 hours a week from  4/15/15 through 4/30/15 because he admittedly was out on leave for 20 days in April, 2015. MARKET is entitled to summary judgment in its favor on liability for any claim MONTES makes of working 55 hours a week from 4/15/15 through 4/30/15.

between 1/21/15 and 1/29/15.   Regardless of this difference, MONTES' own testimony prevents him from ever meeting his burden of proof to show by just and reasonable inference that he worked 112 hours per week from 12/29/14 through 1/1/15 and 55 hours a week from 2/1/15 through 4/15/15.   Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946).

While a plaintiff's burden of proof under Anderson is not high, he faces a much higher burden at the liability stage.   Gilson v. Indaglio, 581 Fed. Appx. 832 (11th Cir. 2014).   An employee must not only produce *sufficient evidence* that he has, in fact, performed work for which he was improperly compensated,  but also *sufficient evidence* of the amount and extent of that work as a matter of just and reasonable inference. See also Allen v. Bd of Ed. Bibb County, 495 F.3d 1306, 1316 (11th Cir. 2007) citing Anderson.   Here, the only evidence which MONTES has to establish MARKET's liability are his answers to Interrogatories and his deposition testimony.   The inconsistencies between his deposition testimony and his sworn response to Interrogatory 2(d) as well as his lack of any ability to recall destroy the *sufficiency* of his evidence.

MONTES' responses to both Interrogatory 2(d) and questioning at deposition establish that his scheduled changed frequently and ***he never worked the same hours from day to day, much less week to week***.   Indeed, MONTES' response to Interrogatory 2(d) states, "I cannot give a more specific schedule during this period [2/1/15 thrugh 4/28/15] because my schedule ***changed very frequently from week to week***." See TAB C.   He "thinks", i.e., ***guesses*** that he may have worked 118-120 hours during the first week or second week of his Second Period of Employment.  [Id.,

p. 96:3-4 and 11; 97:2-7].[12]   MONTES' testified that his hours changed daily. [Id, p. 87:11-13].   The sufficiency of MONTES' claim of 112 hours per week also is destroyed by his own concession that there were weeks in which he only worked 80 hours a week  [Id, p. 98:5-8] and times when he arrived 1-2 hours late  [Id, p. 96:7-23; 100:4--102:5].

Importantly, MONTES ***has no independent recollection of days or hours he worked in any given week or even the time periods when he did not work at all.*** [Id,  p.  32:25-33:5;  35:12-17;40:7-14;  46:21-22;  49:10-13;  70:17-19;  92:15-16;96:17-97:1; 98:1-9; 100:14-101:10;102:3-5; 136:18-23].   He was not even sure what day of the week the work week started. [Id, p. 34:22-35:1], making his "guesstimate" of hours worked each week even that more speculative.   When MONTES was asked to state ***the facts*** supporting a just and reasonable inference that he worked 118-120 hours a week, he responded "because I was there working"  ***He admitted there was nothing that could refresh his recollection.***

Given these conflicts (including claiming to work 55 hours a week during a period MONTES admittedly was out on leave) plus his inability to recall the number of hours he worked on any day or in any week, MONTES cannot meet even the <u>Anderson v. Mt. Clemens Pottery</u> burden of proof.   MONTES' sworn testimony demonstrates that  no jury could ever determine with any degree of clarify or precision the amount and extent of his work nor can he offer evidence or testimony about anything else that would assist a jury in approximating his number of unpaid overtime hours.  See <u>Jackson v. Corr.</u>

---

12    Neither MONTES' Amended Complaint nor his Statement of Claim even mention a claim of working 118-120 per week.

Corp. of America, 606 Fed. Appx. 945 (11th Cir. 2015 [plaintiff's claims so vague and contradictory that they do not meet the test for evidence from which a jury could draw a just and reasonable inference). See also Holaway v. Stratasys, Inc., 771 F.3d 1057 (8th Cir. 2014). Compare Pascual v. Family Boarding Home, Inc., 2012 U.S. Dist. LEXIS 100206 (S.D. Fla. 2012) [plaintiffs' testimony about the number of hours they generally worked *each week* and the number of overtime hours for those weeks was clear and consistent.] [E.S.].

For the reasons that MONTES cannot now and never will be able to testify at trial about the extent of his overtime work from week to week (due to the admitted fluctuations in his schedule, his complete inability to recall his hours for any given week and his vague and contradictory claims), MARKET is entitled to summary judgment in its favor for the periods 12/29/14 through 1/31/15 and 2/1/15 through 4/28/15. However, to the extent that the Court deems that MONTES can meet the Anderson v. Mt. Clemens Pottery test, MARKET, nevertheless, is entitled to summary judgment on all overtime hours shown on MONTES' paychecks for which it paid overtime pay at the rate of time and a half.

E.   MONTES' claim for the wrong rate of pay

When confronted with certain time cards and pay stubs at deposition which proved that he appropriately had been paid overtime. MONTES refused to concede the point. He asserts that MARKET somehow finagled his pay by changing his pay rate from $9.00 per hour to $8.00 per hour to reflect that he is not owed overtime. MONTES has no evidence to support his belief that he was "cheated." This is mere speculation

and does not defeat the entry of summary judgment in MARKET's favor as to those pay periods where his hours are recorded accurately and he was paid at an overtime rate for all hours over forty in a work week.

MONTES next claims he is owed money from MARKET during the First Period of Employment because allegedly he was told by the Meat manager (who lacked authority to hire him or set his rate of pay) [TAB D] that he would be paid $9.00/hr but his paychecks reflect that he was paid only $8.00/hr.   If this was the case,  then MONTES' remedy would be a state law claim for unpaid back wages, not a cause of action under the FLSA.   To the extent that MONTES attempts to state a claim for the wrong rate of pay, MARKET is entitled to summary judgment in its favor.

Count II - Retaliation

MARKET also is entitled to summary judgment in its favor on Count II – Retaliation.   MONTES's deposition testimony shows there is no direct proof of retaliation.   Mr. Karim's alleged statement, "We really don't want you to work for us anymore" is ambiguous and does not indicate on its face a direct correlation to any protected activity.[13]   Evidence that only suggests discrimination, or that is subject to more than one interpretation is not direct evidence.   See Merritt v. Dillard Paper Co., 120 F.3d 1181 (11th Cir. 1997).   Earley v. Champion Intern. Corp., 907 F.2d 1077, 1081-82 (11th Cir.1990).

When a plaintiff lacks direct evidence to establish a retaliatory motive, he may

---

13    MONTES also claims that he protested Mr. Karim's failure to pay him for missing hours on several occasions.   However, MONTES could not pinpoint when any of these complaints took place and therefore, cannot establish temporal proximity.

present circumstantial evidence under the <u>McDonnell Douglas</u> framework.   A prima facie case is proven by pleading and proving that an employee 1) engaged in protected activity;  2) thereafter suffered an adverse employment action;  and 3) but for the protected activity, he would not have suffered the adverse action.    Once this burden is met,  the employer must then articulate legitimate nonretaliatory reasons for the adverse employment action.   If the employer meets this burden of production, then the plaintiff must establish that the proffered reason is pretextual.

A plaintiff can satisfy his initial burden of proof by showing close temporal proximity between the time his employer learned about the protected activity and his discharge.   This standard requires that the actions be "very close." <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001). Unquestionably MONTES can establish close temporal proximity as a result of the 5/28/15 service of his lawsuit on MARKET and his alleged termination by Mr. Karim on 5/30/15.

However, mere temporal proximity will not defeat summary judgment when a plaintiff cannot establish that his protected activity is the ***but for*** reason for his termination.   <u>Rodriguez v.  Cargo Airport Services USA, LLC</u>, 2016 U.S. App. LEXIS 7676 (11th Cir. 4/28/16]; <u>Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000)</u>; <u>Reich v. Davis</u>, 50 F.3d 962, 965-66 (11th Cir. 1995).   Any evidence offered by MONTES must be "significantly probative" of pretext.   <u>Mayfield v. Patterson Plumbing, Co.</u>, 101 F.3d 1371, 1376 (11th Cir. 1996).

To show that the stated reason is pretext for unlawful retaliation, the plaintiff

"must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Vessels v. Atlanta Independent School System, 408 F.3d 763, 771 (11th Cir.2005) (quotation omitted); see also Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1278 (11th Cir.2008) ["The plaintiff must demonstrate weaknesses or implausibilities in the employer's proffered legitimate reasons for its action sufficient for a reasonable factfinder to disbelieve the reasons."].

Here, MONTES cannot meet his burden to show a direct link between his protected activity and his alleged termination.   He also cannot establish pretext: MONTES either does not deny or cannot rebut the following circumstances that might cause an employer to terminate an employee, see Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000): [14]

- MONTES was unreliable.   MONTES did not show up on time on several occasions.   [Id, p. 96:7-23; 100:4--102:5].   He did not think he was scheduled to work on 5/29/15 and did not show up for his evening shift. [TAB A, Montes Depo, p. 40:22-25].   This caused MARKET to have to find an employee who would cover on an emergency basis.   Mr. Kashem had the same problem on 5/17/15 when MONTES did not report to work. [ TAB F].

---

14    MARKET denies that MONTES was terminated. However, this disputes doe not preclude entry of summary judgment in MARKET's favor. Perez v. Brands Mart Serv. Corp., 2011 U.S. Dist. LEXIS 82708 (S.D. Fla. 2011).

- A new employee already had been hired to replace MONTES while he was out on 20 days' disability leave.

- MONTES left the store in an unclean condition at the close of his shift on 5/25/15.   The employee who came on shift that morning complained to Mr. Kashem and Mr. Kashem helped the employee complete the tasks that MONTES did not perform the night before.    [TAB E].

- MONTES had avoided repayment of a loan made by Mr. Karim for over a month. [Id.p. 59:18-19].   Mr. Karim confronted MONTES about repayment when he came early to pick up his paycheck on 5/30/15.   Mr. Karim demanded that MONTES pay the store back right then from his paycheck. MONTES refused to do this [Id. p. 58:8-21 and got into an argument with Mr. Karim in the front of the store where customers and co-workers were present.   [Id, p. 59:18-19]

- MONTES also owed money to co-workers and would not pay them back causing strained working relationships.   [Id, p. 62:13-18; TAB D].

- Any combination of the above.

In order to show that his "termination" was retaliatory,  MONTES must rebut each of these reasons "head-on."  See, See  Palmer v. Albertson's LLC, 418 F. App'x 885, 887 (11th Cir. 2011); Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1308 (11th Cir.2007); Wilson v. B/E Aerospace, Inc.,  376 F.3d 1079, 1088 (11th Cir. 2004) [ when an  employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment.].

MONTES has no evidence other than his own subjective belief that he was terminated in retaliation for filing this lawsuit.  Speculation and beliefs, however, do not prevent the entry of summary judgment.   See Earley v. Champion Int'l Corp., *supra* [noting if an employee alleges discrimination in a conclusory way, but offers nothing more than a bare allegation, summary judgment is appropriate].   See also  Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989).

Nor will MONTES be able to  "come forward with evidence ... sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000).   For these reasons, MARKET is entitled to summary judgment in its favor on Count II.

Good Faith Efforts at Compliance with FLSA.

MARKET was aware of its obligation under the FLSA to keep accurate time records and used a punch card system for this purpose.  MARKET required employees to use the time keeping system to track their hours.   MARKET also allowed employees to review their punch cards at any time. [TAB D].   Indeed, MONTES had access to, and took photos of, the punch cards on a weekly basis to memorialize the hours he worked. [TAB A., p. 33:17-18; 41:17-20; 47:2-5]    MONTES used this method  because he believed the punch cards accurately recorded his work hours.    MONTES never questioned the accuracy of the time cards or the time keeping system.  [Id. 105:25-106:2].

At the end of each pay period, MARKET totaled MONTES' weekly hours and

paid him time and a half for all hours over 40 in a work week.   [TAB B].   MARKET preserved the time cards and produced them to MONTES in this lawsuit. MONTES' pay checks show that MARKET had a practice of paying overtime at a time and a half rate. An accounting error by a bookkeeper resulted in MONTES being underpaid on a limited number of occasions.   MARKET tendered the amount that was due to MONTES upon discovery of the errors.

MARKET was aware of its statutory obligation not to retaliate against an employee who asserted protected rights.   When HOSSAIN was served with MONTES' lawsuit, he immediately sought legal advice from a Board Certified Labor and Employment attorney.   HOSSAIN then instructed his management team not to mention the lawsuit to MONTES or treat him any differently because of the lawsuit.   [TAB D. Hossain Declaration].   Assuming Mr. Karim did in fact terminate MONTES on 5/30/15, there was ample reason for doing so given that MONTES' argument occurred in the front of the store in the presence of customers and co-workers.

<u>CONCLUSION</u>

MONTES claim for overtime pay includes periods of time in which he clearly did not work at all for MARKET or in which did not work any overtime.  If these claims alone did not lack merit,  MARKET then produced time cards and pay checks in the course of the case to prove that MONTES had recorded overtime hours on his time cards and he was paid for those hours at the time and a half rate.   MONTES' testimony established that MARKET's time cards were reliable   Indeed, in some instances, they are even more reliable than MONTES' testimony.  For example,  MARKET's time records showed

that during one period of time, MONTES worked even more hours than he claimed in this case!  Nevertheless,  MONTES and his attorneys continued to assert a claim for overtime during these pay periods based only on his subjective belief that MARKET had engaged in trickery in calculating the overtime that he claims was due to him.

While MONTES' claims that he punched two time cards during a certain period of employment and he worked an average of 90 hours a week, he has no evidence other than his own testimony to establish this claim.   And, even if the existence of two sets of time cards was true (which is denied),  MONTES still could not produce  sufficient evidence to establish the amount or extent of his claimed overtime hours during that period of time.

MONTES' testimony concerning the number of hours he worked during this period is both vague and contradictory.    No jury as a matter of law could determine with any degree of clarify or precision the amount and extent of MONTES' work hours each week given that his schedule changed frequently, his hours varied from day to day and week to week, and he sometimes came in hours late.   MONTES admittedly has no independent recollection of any particular day or any particular week and nothing can ever refresh his recollection.  There are no facts which support his claims other than "I was there and I worked them."  The Eleventh Circuit has affirmed dismissal of an FLSA case where the employee lacks sufficient evidence to present to a jury.    Summary Judgment should be entered in favor of MARKET on Count I.

MONTES claims he was terminated after filing this lawsuit.   Temporal proximity is his only proof.    And, MONTES has no evidence to show that but for filing this lawsuit,

he would not have been terminated.    In fact, the confrontation MONTES had with an assistant manager in the front of the store in view of  customers and co-workers on May 30, 2015 alone would have provided sufficient cause for any employer to terimate an employee.    There were other reasons which would have supported a decision to terminate MONTES as well.   Since MONTES does not deny the 5/30/15  confrontation, he can neither establish a prima facie case nor pretext.   Summary Judgment should be entered in favor of MARKET on Count II.

WHEREFORE,  MARKET  respectfully  requests  the  Court  to  grant  summary judgment to MARKET and against MONTES on all counts and grant such further relief as the Court deems just and proper.

Respectfully Submitted,

LANGBEIN & LANGBEIN, P.A.
Counsel for the Defendants
8181 NW 154th Street, Suite 105
Miami Lakes, FL 33016
Tel:   (305) 556-3663
Fax: (305) 556-3647

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed electronically on May 11, 2015 through CM/ECF and that a copy of the foregoing will be served via notification through CM/ECF on all counsel or parties of record on the attached service list:

By:   /s/ Leslie W. Langbein
Leslie W. Langbein, Esq.
Fla. Bar No. 305391

<u>SERVICE LIST</u>

J. H. Zidell, Esq.
J.H. ZIDELL, P.A.
300 71st Street, Suite 605
Miami Beach, FL 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
Attorney for the Plaintiffs
Email: zabogado@aol.com